IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK WINSTON CRUM INSURANCE, CANNON COCHRAN MANAGEMENT SERVICES, INC.,<br><br>    Defendants. | NO. 1:22-CV-00579-MJT |

## REPORT AND RECOMMENDATION GRANTING DEFENDANT FRANK WINSTON CRUM INSURANCE'S MOTION TO DISMISS

This case is assigned to the Honorable Michael J. Truncale, United States District Judge. On February 26, 2024, Judge Truncale referred three motions to the undersigned United States Magistrate Judge for consideration and disposition: (1) Plaintiff Hallmark Specialty Insurance Company ("Hallmark")'s *Motion for Summary Judgment* (Doc. No. 28); (2) Defendant Frank Winston Crum Insurance ("Frank Winston")'s *Motion to Dismiss* (Doc. No. 29); and (3) Frank Winston's *Motion for Summary Judgment* (Doc. No. 30). Doc. No. 38. This Report will address Frank Winston's *Motion to Dismiss* (Doc. No. 29).

Frank Winston's instant *Motion to Dismiss* seeks dismissal of Hallmark's claims for (1) unjust enrichment; (2) promissory estoppel; (3) negligent misrepresentation; and (4) fraudulent misrepresentation.[1] Doc. No. 29 at 5. After review of the filings and applicable law, the undersigned recommends granting Frank Winston's *Motion to Dismiss* (Doc. No. 29).

---

[1] Hallmark's only other claim, equitable contribution, is addressed in the parties' cross-motions for summary judgment and considered by the undersigned in an earlier Report and Recommendation (Doc. No. 39).

I.      **Factual and Procedural Background**

According to the facts alleged in Hallmark's *Second Amended Complaint*, the parties dispute whether Frank Winston was required to pay defense costs on behalf of Specialty Mechanical Solutions, Inc. ("Specialty") for claims made against Specialty in an arbitration. Doc. No. 21 at 2, ¶ 7. Hallmark is an insurance company headquartered in Texas. *Id.*, ¶ 1. Frank Winston is an insurance company headquartered outside Texas. *Id.*, ¶ 2. Hallmark insured Specialty under two successive one-year commercial general liability ("CGL") policies from June 14, 2013 to June 14, 2015, and Frank Winston insured Specialty under two successive one-year CGL policies from June 14, 2016 to June 14, 2018. *Id.*

Specialty served as an HVAC subcontractor for Camden Construction, Inc. ("Camden") on four construction projects to build nursing care facilities for Harbor Hospice Land Investors of Lake Charles, L.P. ("Harbor"). *Id.*, ¶¶ 9–10. After the construction was completed, Harbor asserted claims against Camden in an arbitration seeking damages for construction defects and resulting damages to the recently constructed facilities. *Id.*, ¶ 7. Camden then filed third-party claims in the arbitration against its subcontractors, including Specialty. *Id.* Camden denied liability to Harbor and asserted that if it was found liable to Harbor, Specialty and the other named sub-contractors should pay for the damage caused. *Id.*, ¶ 10. Camden filed Third-Party Complaints against Specialty and other subcontractors, alleging claims for (1) breach of contract and (2) negligence. *Id.*, ¶¶ 9–10. All parties to the arbitration ultimately reached a settlement agreement. *Id.*, ¶ 19.

Specialty tendered Camden's complaints to Frank Winston on three separate occasions seeking payment of defense costs, and Frank Winston refused to pay such costs each time. *Id.* at 4–6, ¶¶ 11–17. Specialty first tendered Camden's third-party complaint to Frank Winston in May

2

2018. *Id.* at 4, ¶ 12. On May 30, 2018, Frank Winston denied that it had a duty to defend Specialty against Camden's third-party claims. *Id.*, ¶ 13. Specialty again tendered the First Amended Complaint to Frank Winston on September 24, 2018 seeking payment for the same defense costs. *Id.* at 4–5, ¶ 14. On October 16, 2018, Frank Winston again denied that it had a duty to defend Specialty against the claims. *Id.* at 5, ¶ 15.

On May 19, 2021, Specialty tendered the Third Amended Complaint to Frank Winston. *Id.*, ¶ 17. On May 21, 2021, Frank Winston responded to this tender by sending a letter through its third-party administrator, Cannon Cochran Management Services, Inc. ("Cannon"). *Id.* The letter stated that "[Cannon] will continue to handle this claim even though coverage issues exist" and specifically reserved Frank Winston's rights to "withdraw from the defense of this action upon development of information which establishes that there is no coverage." *Id.* The letter also stated that "you may elect to procure attorneys of your own choosing, at your own expense, to personally represent you in the defense of this matter for damages not covered under your General Liability Policy with Frank Winston Crum." *Id.* at 5–6, ¶ 17.

At some point after the third tender, Hallmark and Frank Winston discussed settlement of the arbitration on behalf of Specialty. *Id.* at 6, ¶ 18. Hallmark alleges that the parties agreed on how much to pay to settle the arbitration in a series of emails between Carolyn Bucci ("Bucci"), a representative of Cannon, and the adjuster at Hallmark. *Id.* However, Bucci demanded that Hallmark waive its right to recover past defense costs, but Hallmark would not do so. *Id.* In response, Bucci wrote in an email: "I will deal with the legal when the time comes. Just get it settled." *Id.* Ultimately, Hallmark agreed to pay the defense costs Specialty incurred in the arbitration and paid 100% of such costs, totaling $199,403.31. *Id.*, ¶ 20. Frank Winston repeatedly refused to defend Specialty and denies that it has any obligation to reimburse Hallmark, alleging

3

that no duty to defend Specialty arose based on the plain language of Frank Winston's policies and Camden's third-party complaints against Specialty. *Id.*

On December 8, 2022, Hallmark filed its original *Complaint* against Frank Winston and Cannon. Doc. No. 1. On April 20, 2023, Hallmark filed its *Second Amended Complaint* against Frank Winston, alleging claims for equitable contribution, unjust enrichment, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. Doc. No. 21 at 7–9. On July 7, 2023, Frank Winston filed the instant *Motion to Dismiss* (Doc. No. 29) seeking dismissal of Hallmark's unjust enrichment, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation claims. On July 21, 2023, Hallmark filed its *Response* (Doc. No. 31) to the instant motion, and on July 28, 2023, Frank Winston filed its *Reply* (Doc. No. 33).

## II.     Legal Standard

### A.  Rule 12(b)(6)

Under FED. R. CIV. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must state enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When assessing a motion to dismiss under this rule, the court must accept as true all well-pleaded facts in the plaintiffs' complaint and view those facts in the light most favorable to the plaintiffs. *Allen v. Hays*, 65 F.4th

736, 743 (5th Cir. 2023). However, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotations omitted).

### III. Discussion

Frank Winston's instant *Motion to Dismiss* seeks dismissal of Hallmark's claims for (1) unjust enrichment; (2) promissory estoppel; (3) negligent misrepresentation; and (4) fraudulent misrepresentation. Doc. No. 29 at 5. The undersigned will discuss each claim in turn.

#### A. Unjust Enrichment

Hallmark asserts a claim for unjust enrichment against Frank Winston, alleging that Frank Winston was "unjustly enriched at the expense of Hallmark when Hallmark paid the portion of the defense costs" that Frank Winston was obligated to pay. Doc. No. 21 at 8, ¶ 22. Specifically, Hallmark alleges that the payments made by Hallmark decreased Hallmark's profit while simultaneously increasing Frank Winston's profit by $99,701.65, which is the amount Frank Winston owes to Hallmark. *Id.* Frank Winston moves to dismiss this claim, contending first that its insurance policy with Specialty determines whether it had a duty to defend Specialty in the arbitration, and where a contract governs the subject matter of the parties' dispute, a plaintiff cannot bring a viable unjust enrichment claim. Doc. No. 29 at 10–11. Second, Frank Winston contends that Hallmark's unjust enrichment claim fails because Hallmark did not render a service for Frank Winston. *Id.* at 11. Rather, Hallmark rendered services to Specialty in this matter. *Id.*

Under Texas law, a plaintiff may assert a claim for unjust enrichment "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Southwestern Bell Telephone Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010) (quoting *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "Unjust enrichment occurs when someone has wrongfully secured a benefit or has passively received one

5

which it would be unconscionable to retain." *Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). Courts have also stated that "[u]njust enrichment is an equitable theory of recovery that is based on an implied agreement to pay for benefits received." *Jupiter Enterprises, Inc v. Harrison*, No. 05-00-01914-CV, 2002 WL 318305, at *3 (Tex. App.—Dallas 2002, no pet.).

Courts have recognized two kinds of unjust enrichment: active and passive. *See Cnty. of El Paso, Tex. v. Jones*, No. EP-09-CV-00119-KC, 2009 WL 4730343, at *12 (W.D. Tex. Dec. 4, 2009). "Active" unjust enrichment requires "some underlying contact or nexus between the plaintiff seeking the recovery and the defendant from whom the recovery is sought." *Id.* "Texas law also demands that, in some way, those dealings must have been inequitable, in favor of the defendant and at the expense of the plaintiff, for an unjust enrichment claim to hold." *Id.* Unjust enrichment is also available for "passively received" benefits, "where the nexus is some related third party's acts against the plaintiff, when it would be unconscionable for the receiving party to retain them." *Id.* (citing *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi-Edinburg 2002, pet. denied)). Unjust enrichment is not available "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels*, 832 S.W.2d at 40.

Hallmark has failed to plead sufficient facts plausibly establishing that Frank Winston has either wrongfully secured a benefit or passively received a benefit that would be unconscionable for it to retain. In a conclusory fashion, Hallmark simply states that "[Frank Winston] was unjustly enriched at the expense of Hallmark when Hallmark paid the portion of the defense costs [Frank Winston] should have paid." Doc. No. 21 at 8, ¶ 22. The undersigned is skeptical of Hallmark's

6

allegation that Frank Winston not paying Specialty's defense costs constituted a "benefit" to Frank Winston, but will assume its truth at the motion to dismiss stage. *Id.* However, even if this constituted a benefit, Hallmark has failed to plead facts showing how this "benefit" was obtained by Frank Winston through fraud, duress, or the taking of an undue advantage.

Hallmark and Frank Winston did not share any underlying "nexus" regarding their potential obligations to Specialty. Rather, each company had its own unique obligations to potentially pay Specialty's defense costs, and those obligations were separate and independent from each other based on each company's respective policy with Specialty. Frank Winston assessed Specialty's three tenders of Camden's complaints and each time determined that it was not obligated to defend Specialty. *Id.* at 4–6, ¶¶ 12–16. Hallmark assessed the same tenders of the same complaints and determined that it *was* obligated to defend Specialty, and began doing so in September 2018. *Id.* at 4–5, ¶ 14. The parties' respective decisions on whether to pay defense costs were entirely independent of each other, and Hallmark has not pleaded facts showing that Frank Winston's decisions regarding its duty to defend involved fraud, duress, or undue influence toward Hallmark.

Moreover, Hallmark has not shown how Frank Winston's actions were inequitable, in favor of the defendant and at the expense of the plaintiff, such that it would be "unconscionable" for Frank Winston to retain them. The fact that the parties reached opposite conclusions on a business decision and that Hallmark then paid the entire cost of defense does not indicate inequity or unconscionability. Though Hallmark disagrees with Frank Winston's decision regarding its duty to defend, this does not render Frank Winston's decision unconscionable, and it does not alter Hallmark's obligation to pay defense costs based on Hallmark's interpretation of its own insurance policy. Accordingly, Hallmark's claim for unjust enrichment should be dismissed.

7

### B.  Promissory Estoppel

Hallmark asserts a claim for promissory estoppel, alleging that Frank Winston, acting through Cannon and Cannon's representative, Carolyn Bucci, agreed to defend Specialty.  Doc. No. 21 at 8, ¶ 23.  Hallmark also alleges that Frank Winston agreed that it would "deal with the legal" expenses Hallmark had paid on behalf of Specialty after the conclusion of the arbitration. *Id.*  The basis of this allegation is an email from Bucci, acting on behalf of Frank Winston, to Hallmark's adjuster that stated "I will deal with the legal when time comes.  Just get it settled." *Id.*  Hallmark alleges that based on this statement, it reasonably believed that Frank Winston would pay its fair share of the legal costs after the settlement was finalized and relied on Bucci's statement to its detriment.  *Id.*

Frank Winston moves to dismiss Hallmark's claim for promissory estoppel, contending that it never made a reasonably definite promise to Hallmark that it would defend Specialty.  Doc. No. 29 at 11–12.  Rather, the email from Bucci constitutes a "textbook example" of a "vague assurance" that no reasonable person would justifiably rely on.  *Id.* at 12.  Additionally, Frank Winston contends that Hallmark has not sufficiently alleged that it actually relied on either the reservation of rights letter or Bucci's comment made in the email because Hallmark did not materially change its position in reliance on the promise.  *Id.* at 12–13.

Under Texas law, "[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment."  *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).  To establish detrimental reliance, a plaintiff must demonstrate that they materially changed their position in reliance on the defendant's promise.  *Trevino & Assocs. Mech., L.P. v. Frost Nat. Bank*, 400 S.W.3d 139, 146 (Tex. App.—

8

Dallas 2013, no pet.); *see also Sivertson v. Citibank, N.A. as Tr. for Registered Holders of WAMU Asset-Back Certificates WAMU Series No. 2007-HE2 Tr.*, 390 F. Supp. 3d 769, 787 (E.D. Tex. 2019). Additionally, "[t]he asserted promise must be sufficiently specific and definite so that it would be reasonable and justified for the promisee to rely on it as a commitment to future action." *Eaton v. Mazanec Constr. Co.*, No. 10-21-00107-CV, 2022 WL 7211332, at *7 (Tex. App.—Waco 2022, no pet.).

Hallmark has failed to allege sufficient facts to plausibly establish that it detrimentally relied on Frank Winston's alleged "promise" because it has not shown that it materially changed its position in reliance on this promise. Hallmark alleges that "[b]ecause [Frank Winston] asserts the Settlement Agreement released [Frank Winston] from its agreement to pay past defense costs, Hallmark reasonably relied on [Frank Winston] and [Cochran]'s statement that it would defend and the statement that [Frank Winston] would deal with the legal costs after the case settled to its detriment." Doc. No. 21 at 8–9, ¶ 23. This conclusory statement does not establish that Hallmark materially changed its position in any way.

According to the facts alleged in Hallmark's Second Amended Complaint, Hallmark was paying Specialty's defense costs by at least September 2018. *Id.* at 4–5, ¶ 14. The statements that constitute the alleged "promise" by Frank Winston were made in May 2021. *Id.* at 5–6, ¶¶ 17–18. Thus, Hallmark was paying Specialty's defense costs for nearly three years prior to Frank Winston's alleged promise. Hallmark failed to plead any facts showing that because of Frank Winston's promise in May 2021, it changed its position with respect to the payment of defense costs. Thus, Hallmark has failed to plead facts supporting the detrimental reliance element of its claim for promissory estoppel. Accordingly, Hallmark's claim for promissory estoppel should be dismissed.

### C. Negligent Misrepresentation

Hallmark also alleges a claim for negligent misrepresentation. Doc. No. 21 at 9, ¶ 24. Hallmark alleges that Bucci made a material representation that Frank Winston would defend Specialty in the arbitration when she wrote in an email: "I will deal with the legal when time comes. Just get it settled." *Id.* Further, this representation by Frank Winston was made in its course of business and was a representation in which it had a financial interest. *Id.* Hallmark alleges it suffered a financial loss of $99,701.65 due to its justifiable reliance on Frank Winston's representations. Moreover, Hallmark alleges that Cannon and Frank Winston "failed to exercise reasonable care in gathering or disseminating this false information." *Id.*

Frank Winston moves to dismiss this claim, contending that neither Frank Winston's reservation of rights letter nor Bucci's comment in her email are sufficiently definite to constitute a "representation." Doc. No. 29 at 15. Specifically, regarding the reservation of rights letter, Frank Winston contends that language reserving its right to withdraw its defense is too vague to form the basis of a misrepresentation without an express agreement to provide a defense. *Id.* Regarding Bucci's comment, Frank Winston contends that "a person's comment to deal with something at an unspecified later date is far too indefinite" to serve as a misrepresentation to Hallmark. *Id.* Frank Winston also contends that Hallmark's allegation of negligent misrepresentation does not satisfy the FED. R. CIV. P. 9(b) pleading standard because Hallmark does not include "the required who, what, when, and where" factual allegations for Bucci's comment. *Id.* Specifically, "the date and context of the event are entirely absent from the pleadings." *Id.*

Additionally, Frank Winston contends that Hallmark cannot establish the justifiable reliance element because "red flags" indicated that reliance on the reservation of rights letter and Bucci's comment was unwarranted. *Id.* at 16. Frank Winston further asserts that red flags are

10

especially relevant where a plaintiff is a "sophisticated business entity." *Id.* Additionally, Frank Winston contends that there is no evidence that Hallmark actually relied on either the reservation of rights letter or Bucci's comment. *Id.* Thus, according to Frank Winston, Hallmark's claim for negligent misrepresentation fails. *Id.* at 18.

Under Texas law, "[t]o prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018). "Both common law fraud and negligent misrepresentation require a showing of actual and justifiable reliance." *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied). In measuring whether reliance is justifiable, courts inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, it is extremely unlikely that there is actual reliance on the plaintiff's part." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (internal quotations omitted).

Hallmark has not alleged sufficient facts to plausibly establish the justifiable reliance element. As large insurance companies, Hallmark and Frank Winston are both sophisticated business entities. *See Orca Assets*, 546 S.W.3d at 656 (finding that JPMorgan, one of the world's largest banks, and Orca, an oil and gas company, were sophisticated business entities composed of knowledgeable, skilled, and experienced people capable of handling complex business negotiations). Thus, it is reasonable to expect Hallmark to have obtained an explicit agreement

11

confirming that Frank Winston agreed to reimburse Hallmark for defense costs Hallmark paid. Instead, Hallmark alleges it relied on (1) a reservation of rights letter Frank Winston sent to its insured (and not to Hallmark) and (2) a comment in an email, "I will deal with the legal when time comes. Just get it settled." Doc. No. 21 at 6, ¶ 18.

Hallmark has not alleged the existence of any explicit agreement between the parties or any specific promise by Frank Winston that it would reimburse Hallmark for defense costs it paid. Frank Winston's vague statement "I will deal with the legal," made in May 2021, is not an affirmative promise to reimburse Hallmark for nearly three years of past defense costs Hallmark paid. Nor is it an affirmative promise to begin paying defense costs from May 2021 onward. Thus, Hallmark's alleged reliance on this statement and the reservation of rights letter was not justifiable given Hallmark's status as a sophisticated business entity. Accordingly, Hallmark's claim for negligent misrepresentation should be dismissed.

### D. Fraudulent Misrepresentation

Finally, Hallmark alleges a fraudulent misrepresentation claim based on the same factual allegations underlying its negligent misrepresentation claim. Doc. No. 21 at 9, ¶ 25. Hallmark alleges that Frank Winston's reservation of rights letter constituted an agreement by Frank Winston to defend Specialty, yet, Frank Winston has still not paid any of the defense costs. *Id.* Hallmark contends that this was a false representation made by Bucci, Cannon, and Frank Winston with knowledge of its falsity or a reckless disregard of the truth of the representation. *Id.* at 10. Hallmark further alleges that Frank Winston intended to induce Hallmark to act upon the representation, Hallmark justifiably relied on the representation, and this reliance cause injury to Hallmark in the amount of one-half of the defense costs Hallmark paid on Specialty's behalf. *Id.*

12

Under Texas law, a claim for fraudulent misrepresentation requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury. *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019). "Although similar in their essential elements, fraud is more difficult to prove than negligent misrepresentation due to the added element of intent to deceive." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 921 (Tex. 2010) (internal quotations omitted). To prove the intent element, a plaintiff must show that the defendant had a "reason to expect" that its representations will affect other parties' conduct. *Id.* at 922 (citing *Ernst & Young, L.L.P. v. Pacific Mutual Life Ins. Co.*, 51 S.W.3d 573, 575 (Tex. 2001)).

Hallmark states in a conclusory fashion that "Bucci, [Cannon], and [Frank Winston] intended to induce Hallmark to act upon the representation." Doc. No. 21 at 10, ¶ 25. This statement is merely a recital of the intent element, and Hallmark does not support its allegation of intent with any specific facts showing that Frank Winston had a "reason to expect" that its reservation of rights letter or that Bucci's comment in her email about handling "the legal" later would affect Hallmark's conduct with respect to payment of defense costs. Thus, without specific allegations that Frank Winston intended Hallmark to act on its alleged misrepresentations, Hallmark cannot establish the intent element of its fraudulent misrepresentation claim. Accordingly, Hallmark's claim for fraudulent misrepresentation should be dismissed.

## IV. **Conclusion**

For the reasons stated above, the undersigned recommends that Defendant Frank Winston Crum Insurance's *Motion to Dismiss* (Doc. No. 29) should be **GRANTED**.

## V. **Objections**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within **7 days** after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within **7 days** of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of March, 2024.

_____
Zack Hawthorn
United States Magistrate Judge