IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| HALLMARK SPECIALTY INSURANCE COMPANY, <br><br>         Plaintiff, <br><br> vs. <br><br> FRANK WINSTON CRUM INSURANCE, CANNON COCHRAN MANAGEMENT SERVICES, INC., <br><br>         Defendants. | NO. 1:22-CV-00579-MJT |

## REPORT AND RECOMMENDATION GRANTING DEFENDANT FRANK WINSTON CRUM INSURANCE'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case is assigned to the Honorable Michael J. Truncale, United States District Judge. On February 26, 2024, Judge Truncale referred three motions to the undersigned United States Magistrate Judge for consideration and disposition (Doc. No. 38):

> (1) Plaintiff Hallmark Specialty Insurance Company ("Hallmark")'s *Motion for Summary Judgment* (Doc. No. 28);
>
> (2) Defendant Frank Winston Crum Insurance ("Frank Winston")'s *Motion to Dismiss* (Doc. No. 29); and
>
> (3) Frank Winston's *Motion for Summary Judgment* (Doc. No. 30).

Because both motions for summary judgment (Doc. No. 28 and Doc. No. 30) address Hallmark's claim for equitable contribution and involve identical arguments, both motions will be addressed in this Report.

Hallmark's claim for equitable contribution arises from a dispute over whether Frank Winston must reimburse Hallmark for defense costs that Hallmark paid on behalf of Specialty Mechanical Solutions, LLC ("Specialty") in an arbitration proceeding.  Doc. No. 30 at 6.  Specialty

was a third-party defendant in the arbitration.  Doc. No. 21 at 2.  Specialty was insured under commercial general liability insurance policies ("CGLs") by Hallmark between 2013 and 2015 and by Frank Winston between 2016 and 2018.  Doc. No. 28 at 3; Doc. No. 30 at 12.  The arbitration ultimately settled.  Doc. No. 30 at 10.  Hallmark paid 100% of Specialty's defense costs in the arbitration, and Frank Winston denied coverage and refused to pay any defense costs.  Doc. No. 28 at 9; Doc. No. 30 at 6.  Hallmark then filed suit against Frank Winston, asserting, among other claims, a claim for equitable contribution seeking one-half of Specialty's defense costs that were paid by Hallmark.  Doc. No. 21 at 7.  Hallmark contends that it and Frank Winston shared a common obligation to defend Specialty.  Doc. No. 28 at 13.  Frank Winston responds that the language of its insurance policy and the third-party claims of Camden Construction, Inc. ("Camden") precluded any payment of defense costs.  Doc. No. 30 at 17.

After careful review of the filings and applicable law, the undersigned recommends granting Frank Winston's *Motion for Summary Judgment* (Doc. No. 30) and denying Hallmark's *Motion for Summary Judgment* (Doc. No. 28) because the causes of action alleged in Camden's third-party complaints fall within the scope of two exclusions included in Frank Winston's insurance policy.

### I.    Factual and Procedural Background

According to the facts alleged in Hallmark's *Second Amended Complaint*, the parties dispute whether Frank Winston was required to pay defense costs on behalf of Specialty for claims made against Specialty in an arbitration.  Doc. No. 21 at 2, ⁋ 7.  Hallmark is an insurance company headquartered in Texas.  *Id.*, ⁋ 1.  Frank Winston is an insurance company headquartered outside Texas.  Id., ⁋ 2.  Specialty is a Texas corporation.  Doc. No. 28-11 at 3.  Specialty had CGL insurance policies with both Hallmark and Frank Winston.  Doc. No. 30 at 6.  Hallmark insured

Specialty under two successive one-year policies from June 14, 2013 to June 14, 2015, and Frank Winston insured Specialty under two successive one-year policies from June 14, 2016 to June 14, 2018.  Doc. No. 28 at 3; Doc. No. 30 at 12.  Hallmark and Frank Winston's policies contain identical CGL coverage forms which provide the general insuring agreement.  Doc. No. 28 at 3.

Specialty served as a sub-contractor for Camden Construction, Inc. ("Camden") on four construction projects to build nursing care facilities for Harbor Hospice Land Investors of Lake Charles, L.P. ("Harbor").  Doc. No. 30 at 6; Doc. No. 21 at 2.  Specialty was involved in either the design or installation of the HVAC system at all four facilities.  Doc. No. 30 at 6.  After the construction was completed, Harbor brought claims against Camden in an arbitration seeking damages for construction defects and resulting damages to the recently constructed facilities.  Doc. No. 21 at 2.  Camden then filed third-party claims in the arbitration against its sub-contractors, including Specialty.  *Id.*  Camden denied liability to Harbor and asserted that if it was found liable to Harbor, Specialty and the other named subcontractors should pay for the caused damage.  Doc. No. 28 at 7.

Camden filed its original Third-Party Complaint against Specialty and other sub-contractors on April 13, 2018.  Doc. No. 30 at 9.  Camden later filed its First Amended Complaint on May 3, 2018, and served its Third Amended Complaint on the parties on January 21, 2021.[1]  *Id.* All three complaints contained claims for (1) breach of contract, seeking indemnification, and (2) negligence, seeking contribution from the subcontractors, including Specialty.  *Id.* at 10.  The arbitration ultimately settled.  *Id.*  On May 25, 2021, all parties in the arbitration, including

---

[1] The parties do not mention a Second Amended Complaint and have not provided a copy of any such complaint in their summary judgment evidence.  Accordingly, the undersigned will focus on the claims in Camden's Original Complaint, First Amended Complaint, and Third Amended Complaint asserted in the arbitration in resolving the instant motions for summary judgment.

Specialty, attended a mediation, and reached a settlement agreement that was memorialized in October 2021.  *Id.*

Specialty tendered Camden's complaints to Frank Winston on three separate occasions seeking payment of defense costs, and each time, Frank Winston refused and asserted it had no duty to defend Specialty.  First, Specialty tendered the Original Complaint to Frank Winston on April 24, 2018, seeking payment for defense costs Specialty incurred in the arbitration.  Doc. No. 28 at 7.  On May 30, 2018, Frank Winston denied that it had a duty to defend Specialty against Camden's third-party claims.  Doc. No. 28 at 7.  Second, on September 24, 2018, Specialty tendered the First Amended Complaint to Frank Winston seeking payment for the same defense costs.  Doc. No. 28 at 8.  On October 16, 2018, Frank Winston again denied that it had a duty to defend Specialty against the claims.  *Id.*  Third, on May 19, 2021, Specialty tendered the Third Amended Complaint to Frank Winston.  Doc. No. 30 at 10.  On May 21, 2021, Frank Winston, through one of its agents, sent a reservation of rights letter to Specialty stating that "[the agent] will continue to handle this claim even though coverage issues exist."  Doc. No. 28 at 9.

Ultimately, Hallmark agreed to pay the defense costs Specialty incurred in the arbitration and paid 100% of such costs, totaling $199,403.31.  Doc. No. 28 at 9.  Frank Winston repeatedly refused to defend Specialty and denies that it has any obligation to reimburse Hallmark, alleging that no duty to defend Specialty arose based on the plain language of Frank Winston's policies and Camden's third-party complaints against Specialty.  Doc. No. 30 at 6.

Section I of Frank Winston's insurance policy discusses the duty to defend the insured when damages due to "bodily injury" or "property damage" occur:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

        . . .

        b. This insurance applies to "bodily injury" and "property damage" only if:

            (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

            (2) The "bodily injury" or "property damage" occurs during the policy period.

*See* Doc. No. 28-5 at 20.

Section V of the policy provides definitions of "occurrence" and "property damage":

**SECTION V – DEFINITIONS**

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

17. "Property damage" means:

        a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See id.* at 33–34.

Additionally, the policy contains the following exclusions:

**EXCLUSION – CONTRIBUTION & IMPLIED CONTRACT INDEMNIFICATION**

> This insurance does not apply and no duty to defend is provided by us for "bodily injury", "property damage", "personal injury" and "advertising injury" arising wholly or in part out of any claims and/or "suits" made against any insured and/or additional insured under this policy for contribution.

> This insurance does not apply and no duty to defend is provided by us for "bodily injury", "property damage", "personal injury" and "advertising injury" arising wholly or in part out of any claims and/or "suits" made against any insured and/or additional insured under this policy for breach of an implied in fact or implied in law contract, contractual indemnification, or common law indemnification.

*See id.* at 82.

On December 8, 2022, Hallmark filed its original *Complaint* against Frank Winston and Defendant Cannon Cochran Management Services, Inc. ("Cannon"), Frank Winston's agent. Doc. No. 1. On April 20, 2023, Hallmark filed its *Second Amended Complaint* against Frank Winston, alleging claims for equitable contribution, unjust enrichment, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation. Doc. No. 21 at 7–9. On July 7, 2023, Hallmark filed its instant *Motion for Summary Judgment*, addressing only the equitable contribution claim. Doc. No. 28 at 2. On July 28, 2023, Frank Winston filed its *Response* (Doc. No. 34), and on August 4, 2023, Hallmark filed its *Reply* (Doc. No. 36).

On July 7, 2023, Frank Winston filed its instant *Motion for Summary Judgment*, also addressing only Hallmark's equitable contribution claim. Doc. No. 30. On July 28, 2023, Hallmark filed its *Response* (Doc. No. 34), on August 4, 2023, Frank Winston filed its *Reply* (Doc. No. 36), and on August 11, 2023, Hallmark filed its *Sur-Reply* (Doc. No. 37).

Along with its *Motion for Summary Judgment* (Doc. No. 30), Frank Winston filed a concurrent *Motion to Dismiss* addressing Hallmark's claims for unjust enrichment, promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation.  Doc. No. 29.[2]

## II.    Legal Standards

### A.  Motion for Summary Judgment

Summary judgment shall be granted when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022).  A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is material when it is relevant or necessary to the ultimate outcome of the case.  *Id.*  ("[T]he substantive law will identify which facts are material").  The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute.  *See Celotex*, 477 U.S. at 323; *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005).  The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

The movant must support its assertion by "citing to particular parts of materials in the record . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or [showing] that an adverse party cannot produce admissible evidence to support the fact."  FED.

---

[2] This report and recommendation addresses the two cross-motions for summary judgment on Hallmark's equitable contribution claim (Doc. No. 28 and Doc. No. 30).  The claims addressed in Frank Winston's *Motion to Dismiss* (Doc. No. 29) will be addressed in a separate forthcoming report and recommendation.

R. Civ. P. 56(c)(1)(A)–(B).  "[T]he court . . . may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255.  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co*, 136 F.3d 455, 458 (5th Cir. 1998).

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  As a result, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (quoting *Harvill*, 433 F.3d at 433).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

"Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'" *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995) (quoting *Anderson*, 477 U.S. at 255–56).

### B.  Interpretation of Insurance Contracts Under Texas Law and the Duty to Defend

When interpreting an insurance policy, a court applies the rules for interpreting contracts generally, reading all parts of the document together and exercising caution not to isolate particular sections or provisions.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).  Viewing the contract in its entirety allows a court to give effect to the written expression

of the parties' intent. *Id.* A court "must read all parts of a policy together, giving meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006). "As with any other contract, the parties' intent is governed by what they said, not by what they *intended* to say but did not." *Id.* at 746 (emphasis in original). The words of a policy "are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022).

Whether the insurer owes a duty to defend is a question of law for the court to decide. *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 471–72 (5th Cir. 2009). The insured has the initial burden of establishing coverage under the terms of the policy. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). If the insured meets this initial burden, the burden then shifts to the insurer, who has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage. *Id.* If the insurer successfully proves that an exclusion applies, "the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id.*

In determining whether an insurer has a duty to defend, Texas courts apply the "eight corners" rule, which directs a court to "determine an insurer's duty to defend its insured based on (1) the pleadings against the insured and (2) the terms of the insurance policy." *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022). "Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination." *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). "For both the third-party complaint and the insurance policy, if there are any ambiguities, the tie goes to the insured." *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 494 (5th Cir. 2022); *see also Zurich Am. Ins.*

*Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (noting that all doubts regarding the duty to defend are resolved in favor of the duty).  "When the language of an insurance policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured." *Siplast*, 23 F.4th at 494 (internal quotations omitted).  The "eight corners" rule limits a court's consideration to the underlying pleadings "without regard to the truth or falsity of their allegations and to the relevant insurance policy." *Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) (internal quotations omitted).

"When pleadings in the underlying lawsuit have been amended, the court analyzes the duty to defend by examining the latest, and only the latest, amended pleadings." *Bitco*, 31 F.4th at 329–30 (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983)).  "A complaint which does not initially state a cause of action under the policy, and so does not create a duty to defend, may be amended so as to give rise to such a duty." *Rhodes*, 719 F.2d at 119.  "Likewise, a complaint which does allege a cause of action under the policy so as to create a duty to defend may be amended so as to terminate the duty." *Id.*

"Under Texas Law, an insurer has a duty to defend its insured in an underlying suit if *any* allegation in the complaint, if taken to be true, is even *potentially* covered by the terms of the Policy." *Energy Res., LLC v. Petroleum Sols. Int'l, LLC*, No. CIV.A. H:08-656, 2011 WL 3648083, at *6 (S.D. Tex. Aug. 17, 2011) (citing *GuideOne*, 197 S.W.3d at 310) (emphasis added). "If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas*, 249 F.3d 389, 395 (5th Cir. 2001). "Only if *all* allegations contained in the underlying complaint fall outside the scope of the policy does the insurer have no duty to defend its insured." *Allied Prop. & Cas. Ins. Co. v. Armadillo Distribution Enterprises, Inc.*, No. 4:21-CV-00617-ALM, 2022 WL 3568482, at *7 (E.D. Tex.

Aug. 18, 2022). The "eight corners" rule limits the court's consideration to the relevant insurance policy and the underlying pleadings "without regard to the truth or falsity of their allegations." *Bitco*, 31 F.4th at 329 (internal quotations omitted).

### C. Equitable Contribution

Texas law provides that insurers may seek reimbursement under the doctrine of equitable contribution if "two or more insurers bind themselves to pay the entire loss ensured against, and one insurer pays the whole loss," in which case "the one so paying has a right of action against his co-insurer . . . for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurers." *Colony Ins. Co. v. First Mercury Ins. Co.*, 88 F.4th 1100, 1112 (5th Cir. 2023). "To qualify for equitable contribution, the insurers must have: (1) shared a common obligation or burden; and (2) the insurer seeking contribution must have made a compulsory payment or other discharge of more than its fair share of the common obligation or burden." *Id.* (citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex. 2007)). "A common obligation arises if two insurance policies insure the same party, the same interest, and the same risk." *Id.* (internal citations omitted).

### III.   <u>Discussion</u>

The parties dispute three issues related to Hallmark's claim for equitable contribution: (1) whether any of Camden's third-party complaints allege "property damage" to satisfy the insuring agreement, thus triggering Frank Winston's duty to defend and creating a "common obligation" with Hallmark; (2) whether the contribution and contractual indemnity exclusions in the Frank Winston insurance policy preclude Frank Winston's duty to defend; and (3) whether Hallmark's claims against Frank Winston were extinguished by the settlement agreement reached by all parties to the arbitration. Doc. No. 30 at 14. The second element of Hallmark's equitable contribution

11

claim is established because Hallmark paid 100% of Specialty's defense costs, totaling $199,403.31, which it alleges was more than its fair share.  Doc. No. 28 at 9.  Thus, these three issues pertain to the first element: whether Hallmark and Frank Winston shared a "common obligation."  The undersigned will discuss each issue in turn.

### A. Whether Camden's Third-Party Complaints Against Specialty State a Claim for "Property Damage"

Hallmark contends that it shared a contractual obligation with Frank Winston to defend Specialty in the arbitration based on each company's respective insurance policies.  Doc. No. 28 at 13.  Frank Winston's insurance policy provides, in part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] [t]he 'bodily injury' or 'property damage' occurs during the policy period."  Doc. No. 28-5 at 20.  Hallmark argues that the allegations in each of Camden's three third-party complaints establish that property damage was caused by an occurrence within the coverage territory, and this occurrence took place during the policy period.  According to Hallmark, Camden's third-party complaints triggered Frank Winston's duty to defend.  Because both Hallmark and Frank Winston owed a duty to defend Specialty, a "common obligation"[3] existed.  Doc. No. 28 at 13.

Frank Winston responds that it had no duty to defend Specialty against the allegations in Camden's Original and First Amended Complaint because neither complaint alleged "property damage" caused by Specialty sufficient to trigger Frank Winston's duty to defend.[4]  Doc. No. 30 at 17.  Specifically, Frank Winston points to one allegation in Camden's Original and First

---

[3] It is undisputed that Hallmark owed Specialty a duty to defend in the underlying arbitration.

[4] The parties discuss three of Camden's third-party complaints: the Original Complaint, the First Amended Complaint, and the Third Amended Complaint.  *See* Doc. No. 30 at 19–20; Doc. No. 32 at 3.

Amended Complaints that states "[d]amage was allegedly caused at the Buildings as a result of the alleged roof leaks, and HVAC issues at the Buildings." Doc. No. 30 at 19. According to Frank Winston, this allegation does not involve "property damage" caused by Specialty's HVAC work, but rather, it involves merely an allegation of a defective HVAC, which alone is not "property damage" under Texas law. *Id.* However, Frank Winston admits that Camden's Third Amended Complaint "potentially triggered coverage" where it stated "Harbor further alleges that Respondents' negligence, poor workmanship, and/or unintended construction defects caused consequential damage to the structures of the Buildings and component parts therein." *Id.*; Doc. No 28-11 at 8–9.

The parties extensively discuss whether the allegations in Camden's Original and First Amended Complaints against Specialty sufficiently allege "property damage" to trigger coverage under Frank Winston's insurance policies. *See, e.g.*, Doc. No. 30 at 17–20; Doc. No. 28 at 13–20. However, the Original and First Amended Complaints are irrelevant to determining whether Frank Winston's duty to defend was triggered. A court "analyzes the duty to defend by examining the latest, and only the latest, amended pleadings." *Bitco*, 31 F.4th at 329–30. Here, the most recent pleading is Camden's Third Amended Complaint. *See* Doc. No. 28-11. Whether the duty to defend arises here is determined only by the allegations in Camden's Third Amended Complaint. Thus, in applying the "eight corners" rule to determine whether Frank Winston owed a duty to defend Specialty in the arbitration, the court must compare the allegations in Camden's Third Amended Complaint (Doc. No. 28-11) to Frank Winston's insurance policies (Doc. No. 28-5 and 28-6). In doing so, the court determines whether the allegations in the Complaint potentially fall within the scope of the policy's coverage. *See Monroe*, 640 S.W.3d at 199.

Hallmark contends that the allegations in Camden's Third Amended Complaint fall within the scope of Frank Winston's policy.  Doc. No. 28 at 13.  Frank Winston essentially concedes this point, arguing that "[o]nly Camden's Third Amended Third-Party Petition alleged 'property damage' that potentially triggered coverage."  Doc. No. 30 at 17.  In Camden's Third Amended Complaint, it alleges that "Harbor further alleges that Respondents' negligence, poor workmanship, and/or unintended construction defects caused consequential damage to the structures of the Buildings and component parts therein."  Doc. No 28-11 at 8–9.  This allegation sufficiently alleges "property damage" in accordance with Frank Winston's policy, which provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'" and "the 'property damage' occurs during the policy period."  Doc. No. 28-5 at 20.

First, Camden's allegation that Specialty's negligence and poor workmanship caused "consequential damage to the structures of the Buildings" is sufficient to allege "property damage" because under the Frank Winston policy, property damage is defined as "physical injury to tangible property."  Doc. No. 28-5 at 33–34.  An allegation of damage to the structures of the buildings satisfies this definition.

Second, Hallmark contends that an unintentional construction defect is sufficient to constitute an "occurrence" under the Hallmark and Frank Winston CGL policies.  Doc. No. 28 at 15.  Hallmark is correct.  The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Doc. No. 28-5 at 33–34.  The Texas Supreme Court held that "[a]n accident is generally understood to be a fortuitous, unexpected, and unintended event."  *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8–9 (Tex. 2007).  Additionally, the court held that an event is not accidental if "the resulting

14

damage was the natural and expected result of the insured's actions" and "was highly probable whether the insured was negligent or not." *Id.* at 9. Therefore, "claims for damage caused by an insured's defective performance or faulty workmanship may constitute an 'occurrence' when 'property damage' results from the 'unexpected, unforeseen or undesigned happening or consequence' of the insured's negligent behavior." *Id.* at 16.

Here, Frank Winston does not contend that the damage to the buildings alleged in Camden's Third Amended Complaint was the "natural and expected result of [Specialty's] actions" or that the damage was "highly probable" regardless of Specialty's negligence. Thus, the damage alleged in Camden's Third Amended Complaint constitutes an "occurrence" under the Hallmark and Frank Winston policies.

Finally, the parties do not dispute that the property damage occurred within the coverage territory and during the period covered by Frank Winston's policies. See Doc. No. 28 at 20–21; Doc. No. 30 at 17–20. Camden's allegation in its Third Amended Complaint regarding consequential damage to the structures of the Buildings thus satisfies Frank Winston's policy. Accordingly, Frank Winston's duty to defend Specialty in the arbitration is triggered by the plain language of its policy. Hallmark satisfied its initial burden of establishing coverage under the terms of the policy and the facts alleged in Camden's Third Amended Complaint. Thus, the burden shifts to Frank Winston to prove that an exclusion applies.

### B. Application of Policy Exclusions

Frank Winston maintains that two exclusions apply and thus, its duty to defend Specialty in the arbitration is precluded. Doc. No. 30 at 20–22. The first is for "Breach of Contract against all Subcontractors" based on the contractual indemnity provision of Camden and Specialty's subcontract. The second is for "Negligence and Contribution against all Subcontractors" based in

part on Camden's allegations of damage to the Buildings as a result of deficient HVAC work by Specialty. Doc. No. 30 at 21. According to Frank Winston, the "clear and definite legal meaning" of the exclusions[5] is that "there is no coverage for third-party claims/suits against insureds where contractual indemnity and contribution are sought from the insured." *Id.* Frank Winston contends that even if Hallmark met its initial burden of establishing policy coverage, Frank Winston "has now met its burden that an exclusion precludes coverage because the lawsuit seeks both contractual indemnity and contribution from Specialty." *Id.* at 21–22.

On the other hand, Hallmark contends that the exclusions do not apply based on a plain reading of their terms. Doc. No. 32 at 8. Specifically, Hallmark asserts that neither exclusion applies because the "property damage" sought by Camden did not "arise out of any claims or suits" against Specialty, which is required under the endorsement's plain terms. *Id.* Rather, the alleged property damage "arose from the construction project," which occurred before the claim was filed, and thus could not "arise out of" any claim or suit against Specialty. *Id.* at 8–9. Furthermore, Hallmark contends that even if the court finds Frank Winston's proposed interpretation of the endorsement reasonable, it must find Hallmark's proposed interpretation reasonable as well. *Id.* at 10. According to Hallmark, the endorsement is ambiguous because it "can be construed several

---

[5] As stated above, the exclusions state:

    This insurance does not apply and no duty to defend is provided by us for "bodily injury", "property damage", "personal injury" and "advertising injury" arising wholly or in part out of any claims and/or "suits" made against any insured and/or additional insured under this policy for contribution.

    This insurance does not apply and no duty to defend is provided by us for "bodily injury", "property damage", "personal injury" and "advertising injury" arising wholly or in part out of any claims and/or "suits" made against any insured and/or additional insured under this policy for breach of an implied in fact or implied in law contract, contractual indemnification, or common law indemnification.

Doc. No. 28-5 at 82; Doc. No. 28-6 at 84.

ways." *Id.* When an endorsement is ambiguous and susceptible to two different, yet reasonable, interpretations, the interpretation that favors the duty to defend must be adopted. *Id.*

A court construes an unambiguous insurance policy as a matter of law. *Fiess*, 202 S.W.3d at 746. "If an exclusion has more than one *reasonable* interpretation, we must construe it in favor of the insured as long as that construction is *not unreasonable*." *Id.* (emphasis added). Additionally, "[a] policy provision is not ambiguous merely because different parties or different courts have interpreted it differently." *Id.* Analysis of policy exclusions requires a "more stringent construction," and a court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Bitco*, 31 F.4th at 331.

If a court determines that only one party's interpretation of the policy is reasonable, the policy is unambiguous and the reasonable interpretation should be adopted. *StarNet Ins. Co. v. RiceTec, Inc.*, 586 S.W.3d 434, 444–45 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). However, if a court determines that both parties' interpretations are reasonable, the policy is ambiguous. *Id.* If a court finds a contract is ambiguous, it must adopt the interpretation favoring the insured. *Certain Underwriters at Lloyd's of London v. Sterling Custom Homes, Inc.*, 705 F. App'x 259, 263 (5th Cir. 2017).

Hallmark's proposed interpretation of the exclusion is not reasonable. Hallmark contends that the exclusions only apply if the literal filing of a claim or lawsuit causes property damage. *See* Doc. No. 32 at 8–9 (contending that "[n]either exclusion applies because the 'property damage' sought by Camden did not arise out of any claims or suits against [Specialty]"). Therefore, according to Hallmark, because the property damage occurred prior to Camden filing its claim, the

17

damage could not have arisen out of Camden's claim.  *Id.*  Hallmark reads the language of the exclusion in its most literal sense to reach this conclusion.  Indeed, the language of the exclusion provides, in relevant part, that "no duty to defend is provided by us . . . for . . . "property damage" . . . *arising* wholly or in part *out of* any claims and/or "suits" made against any insured . . . under this policy for contribution."  Doc. No. 28-5 at 82; Doc. No. 28-6 at 84 (emphasis added).  But this interpretation would render the exclusions completely meaningless.  It is difficult to imagine *any* scenario in which the filing of a claim or lawsuit could cause property damage, that is, "physical injury to tangible property."  Doc. No. 28-5 at 33.  Under Hallmark's interpretation of the language in the exclusion, the exclusion would virtually never apply.  Thus, Hallmark's interpretation is not reasonable.

The undersigned is reluctant to interpret the language of the exclusion in a way that would render it meaningless.  When interpreting a contract under Texas law, a court must "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."  *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (per curiam).  A court must take care to give meaning to every sentence, clause and word "*to avoid rendering any portion inoperative*."  *See Fiess*, 202 S.W.3d at 748 (emphasis added).

The more reasonable interpretation of the exclusions is the one Frank Winston advocates: under the plain language of the exclusions, the Frank Winston policies "do not cover claims or lawsuits seeking contribution or contractual indemnity from the insured."  Doc. No. 30 at 21.  Put differently, when a claim seeking contribution is made against an insured, and that claim arises out of property damage allegedly caused by that insured, the exclusion applies and the duty to defend is precluded.  The plain meaning of the exclusion's language supports the interpretation Frank Winston advocates.  Hallmark has not provided any other reasonable interpretations of the

exclusion, and thus, the undersigned cannot construe the exclusion as ambiguous merely because Hallmark has offered a competing interpretation.  Accordingly, the undersigned finds that only Frank Winston's interpretation of the exclusions is reasonable, and therefore, the meaning of the exclusions is unambiguous.  Frank Winston's interpretation should be adopted.  *See StarNet Ins. Co.*, 586 S.W.3d at 444–45.

Hallmark raises two other arguments suggesting the possibility that Frank Winston's duty to defend is triggered.  First, Hallmark contends that even if the endorsement could be interpreted as excluding "property damage alleged in a claim or suit" (which Hallmark emphasizes "it does not say"), the duty to defend is not eliminated because Camden alleges that Specialty was negligent in the Third Amended Complaint.  Doc. No. 32 at 9.  Negligence is not an enumerated cause of action in the exclusion.  *Id.*  Thus, according to Hallmark, negligence falls within the policy coverage and outside the exclusions, which requires Frank Winson to defend the entire suit.  *Id.* (citing *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004)).

Hallmark's argument regarding negligence is unavailing.  The title of the exclusion is listed in bold, capitalized letters: "EXCLUSION – CONTRIBUTION & IMPLIED CONTRACT INDEMNIFICATION."  Doc. No. 28-5 at 82; Doc. No. 28-6 at 84.  The title of the exclusion plainly indicates that it applies to claims seeking contribution and/or implied contract indemnification.  Moreover, the first paragraph of the exclusion states, in relevant part, that "no duty to defend is provided by [Frank Winston] for . . . "property damage" . . . arising wholly or in part out of ***any claims and/or "suits"*** made against *[Specialty]* . . . ***for contribution***."  *Id.* (emphasis added).  This language broadly encompasses *any claims* for contribution, as long as those claims involve property damage.  Contribution is derivative of a plaintiff's right to recover from a defendant from whom contribution is sought.  *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933,

935 (Tex. 1992). Therefore, under the language of the exclusion, if the cause of action underlying the claim for contribution is for property damage, it does not matter which specific cause of action it is.

If the court adopted Hallmark's proposed interpretation, which is that Frank Winston must defend the entire suit because Camden's negligence claim is not specifically excluded, this interpretation would contravene the plain language of the exclusion. The court would effectively hold that Frank Winston's duty to defend is triggered for a third-party claim that seeks contribution, even though the exclusion states that no duty to defend arises for *any* claim or suit arising out of property damage that seeks contribution. Doc. No. 28-5 at 82; Doc. No. 28-6 at 84. Such an interpretation would render the exclusion meaningless. Thus, the fact that Camden alleged negligence against Specialty in the Third Amended Complaint does not affect the applicability of the exclusion, because Camden sought contribution for a claim arising out of property damage. Accordingly, Frank Winston has no duty to defend Specialty against Camden's claim seeking contribution for negligence.

Turning to Hallmark's second argument, Hallmark alleges that because Texas law does not recognize a common law cause of action for contribution, the presence of the word "contribution" in Camden's Third Amended Complaint is not sufficient to trigger the exclusion. *Id.* at 9. Hallmark has not cited any controlling authority supporting its proposition that an exclusion encompassing claims for contribution cannot be triggered because contribution is not an independent cause of action under Texas law. *See generally* Doc. No. 32 at 9–10; Doc. No. 37 at 6–7. Rather, Hallmark cites cases that simply establish that Texas law does not recognize an independent cause of action for contribution and that contribution is derivative of a plaintiff's right to recover based on an independent cause of action. Doc. No. 32 at 9–10. Hallmark has not

identified, and the undersigned cannot find, any requirement under Texas law that an insurance policy may only exclude independent causes of action.  Accordingly, this argument fails.

In sum, Hallmark has failed to identify a genuine dispute of material fact regarding the applicability of the exclusions to the claims alleged in Camden's Third Amended Complaint against Specialty.  The exclusions apply to Camden's claims seeking (1) contractual indemnity and (2) contribution and thus preclude Frank Winston's duty to defend Specialty in the arbitration. Because no duty to defend arose for Frank Winston, Hallmark and Frank Winston did not share a "common obligation" to defend Specialty.  Accordingly, Hallmark's claim for equitable contribution fails on this basis.

### C.  Application of Release Provisions

Frank Winston contends that even if a duty to defend is triggered based on the allegations in Camden's Third Amended complaint and the exclusions do not apply, Hallmark cannot assert a claim for equitable contribution because any such claims were released based on the settlement agreement reached by the parties to the arbitration.  Doc. No. 30 at 22.  Frank Winston notes that "the Parties and the Releasees—including specifically insurers—forever discharged 'each other and each other's respective agents ***and specifically insurers*** from all demands whether in subrogation or indemnity.'"  *Id.* at 23 (emphasis in original).  Thus, Hallmark's claims against Frank Winston were extinguished by Section 8 of the settlement agreement.  *Id.*

Hallmark disagrees.  According to Hallmark, with respect to Specialty, the language of the settlement agreement can be read as: "SMS . . . releases . . . the other parties to the arbitration and the respective agents of the other parties to the arbitration."  Doc. No. 32 at 11.  Hallmark further notes that the settlement agreement defines the "parties" as those who were named in the arbitration.  *Id.*  The language in the settlement agreement does not state that Specialty releases its

*own* claims against its insurers, or that Hallmark releases any claims against Frank Winston. *Id.* at 12. Therefore, Hallmark contends that the plain language of the settlement indicates that neither Specialty nor Hallmark released any claims against Frank Winston. *Id.*

The parties' release provides in relevant part:

8.    With the exception of the reserved rights and obligations set forth in the immediately following Section (the "Reserved Rights"), all Parties fully, finally, and mutually release, acquit, and forever discharge each other and each other's respective agents, subcontractors/subconsultants, sub-subcontractors/sub-consultants, employees, officers, partners, members, shareholders, parents, affiliates, subsidiaries, principals, trustees, owners, directors, sureties, insurers, additional insurers, excess or umbrella insurers, guarantors, lenders, successors, attorneys and all other persons and entities in privity with any of them (collectively, the "Releasees"), of and from any and all demands, defects or deficiencies in the design, testing or construction of the Projects, or defects or deficiencies in any warranty work (including any claims that warranty work should have been performed), defects or deficiencies in any repairs or inspections performed during or following completion of the Projects by any of the Parties or their consultants, claims to any contract or subcontract balances or retainage except as provided in the Confidential Exhibits, claims of subrogation or indemnity, claims for additional insured status, claims for property damage, loss of use, lost rents, diminution in value, stigma, delay damages, liquidated damages, consequential damages, lost profits, loss of revenue, lot corporate/management fees, debt service, completion costs, delay damages, unpaid subcontractors, attorneys' fees, contractual indemnity, claims for breach of express or implied warranties, negligence, trust fund violations, fraud, and all causes of action of any kind whatsoever, whether known or unknown, whether heretofore or hereafter accruing or arising, whether held by assignment or otherwise, whether for latent or patent defects, whether sounding in tort, intentional tort, contract, or trespass, or arising by operation of law, code, regulation or statute, that any Party has, had, or may ever have in the future (whether in its own name or as assignee or successor for another) against any other Party or Releasee, including previously settled out parties, in any way related to, arising out of, or in connection with the Projects, the Arbitration, the labor, material, services, professional services, any warranty or repair work at the Projects, and inspections or testing of any portion of the Projects, and equipment furnished in connection therewith, and all of the contracts, subcontracts and sub-subcontracts, purchase orders, consulting agreements, engineering agreements, testing agreements, and insurance policies thereunder, the assignments of any claims thereunder, and any and all litigation or arbitration among, or between any of the Parties relating in any way thereto.

9. The following Reserved Rights are not released hereby and shall survive the execution of this Settlement Agreement:

    a. The obligations specifically undertaken by any Party in this Settlement Agreement;

    b. The reservation by any Party entitled to receive funds hereunder, of claims against any Party or its insurers, excess or umbrella insurers, sureties and/or additional insurers for failing to make payment as provided herein;

    c. Insurance carriers for parties to this Agreement who have heretofore accepted defense obligations, whether to their named insured or as an additional insured, are not released from their obligations, if any, to fund defense costs through the conclusion of this settlement and Arbitration.

Doc. No. 30 at 11–12.

The undersigned agrees with Hallmark. The settlement agreement does not serve as a release of claims between insurers of parties to the arbitration. With respect to insurers of parties to the agreement, the relevant language of the release is: "all ***Parties*** fully, finally, and mutually release, acquit, and forever discharge each other and each other's . . . insurers . . . of and from any and all . . . claims of subrogation or indemnity . . . that ***any Party has, had, or may ever have*** . . . ***against any other Party or Releasee*** . . . in any way related to, arising out of, or in connection with the Projects, the Arbitration . . . ." The settlement agreement involves only potential future claims that *parties* to the arbitration may have against *other parties or releasees*. Those parties are Harbor, the plaintiff in the arbitration, Camden, the defendant, and all sub-contractors that are third-party defendants, including Specialty. The word "party" plainly does not include insurers of parties in the context of this agreement. The agreement is silent as to claims between parties' insurers that do not involve the parties themselves. Thus, Hallmark's claims are not extinguished by the settlement agreement reached by the parties to the arbitration.

## IV.    <u>Conclusion</u>

Defendant Frank Winston Crum Insurance has met its summary judgment burden of demonstrating that there are no genuine issues of material fact in dispute.  Plaintiff Hallmark Specialty Insurance Company has failed to meet its summary judgment burden.  Accordingly, the undersigned recommends **GRANTING** Defendant Frank Winston Crum Insurance's *Motion for Summary Judgment* (Doc. No. 30) and **DENYING** Plaintiff Hallmark Specialty Insurance Company's *Motion for Summary Judgment* (Doc. No. 28).

## V.    <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within **7 days** after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within **7 days** of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain

error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 15th day of March, 2024.

_____
Zack Hawthorn
United States Magistrate Judge